IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>v.<br><br>CAMDEN GILLUM (02),<br><br>　　　Defendant. | Case No. 19-40043-02-DDC |

**MEMORANDUM AND ORDER**

This case asks whether the United States must foot the bill for a criminal defendant's legal fees after she hired an attorney and prevailed in her defense. Congress has authorized federal courts to award attorney's fees and other litigation expenses to certain prevailing criminal defendants. But the governing statute narrowly limits the availability of these awards.

Defendant Camden Gillum prevailed in her criminal defense. She spent substantial sums to do so. Now she asks the court to award her attorney's fees and litigation expenses. The United States objects on the ground that Ms. Gillum fails to show that the government committed any of the three sins necessary to warrant relief. Ultimately, the court agrees with the government and concludes that Ms. Gillum does not establish that the law entitles her to an award of attorney's fees. The court explains this conclusion after providing a brief history of the unsuccessful federal criminal prosecution that induced Ms. Gillum's motion.

**I.   Background**

On May 29, 2019, a federal grand jury returned an Indictment (Doc. 1) against Tyler and Camden Gillum—a married couple who live in Kansas. The Indictment alleged that Ms. Gillum had acted to defraud various banking institutions through loan fraud and something called

"check-kiting" that resulted in losses totaling millions of dollars. Doc. 1 at 1–11. Ms. Gillum responded by filing a "Motion to Dismiss Indictment Based on Grand Jury Abuse" (Doc. 25).

But the court never ruled on the merits of that motion because the government moved to dismiss the Indictment against Ms. Gillum with prejudice. Doc. 34 at 1. The court granted the government's motion. Doc. 36 at 1–2. Contemporaneously with the government's request, Ms. Gillum had withdrawn her motion to dismiss as moot. Doc. 33 at 1. She then filed "Motion and Memorandum in Support of Camden Gillum's Application for Award of Attorney's Fees and Litigation Costs" (Doc. 39) and some associated exhibits (Doc. 39-1; Doc. 64; Doc. 65; Doc. 66). The government filed a Response (Doc. 62) and associated exhibits of its own. Ms. Gillum did not file a Reply, and the deadline to do so has passed. *See* D. Kan. Rule 1.1(a) ("These rules govern the procedure in all proceedings before this court."); D. Kan. Rule 6.1(d) (explaining that "Replies must be filed and served within 14 days of the service of the response").

The court now recites the legal standard governing this kind of motion for a fee award, and then applies that standard to Ms. Gillum's request.

## II.     Legal Standard

A federal law called the "Hyde Amendment" allows the court to award attorney's fees and litigation expenses to certain prevailing criminal defendants. The statute provides:

> [T]he court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) . . . may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.

18 U.S.C. § 3006A (Note).

The statute also explains that these "awards shall be granted pursuant to the procedures and limitations . . . provided for an award under" 28 U.S.C. § 2412. *Id.*; *see also United States v.*

2

*Robbins*, 179 F.3d 1268, 1269–70 (10th Cir. 1999) (discussing the relationship between the Hyde Amendment and 28 U.S.C. § 2412). The "procedures and limitations" that the Hyde Amendment borrows from § 2412 limit who may seek an award, when they may do so, and how much they may recover. For example, the fee applicant's net worth must not exceed the statutory caps when the action was filed. 28 U.S.C. § 2412(d)(2)(B).[1] The fee applicant "shall" file an application "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). And the court shall not award attorney's fees exceeding "$125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The Tenth Circuit reviews "a district court's determination of a defendant's request for attorney's fees under the Hyde Amendment for an abuse of discretion." *United States v. Lain*, 640 F.3d 1134, 1137 (10th Cir. 2011).

With these statutory rules in mind, the court now considers Ms. Gillum's motion. But before weighing whether the government's position was vexatious, frivolous, or in bad faith, the court first determines whether Ms. Gillum meets several of the statutory prerequisites.

---

[1] Many courts have concluded that § 2412(d)'s limitations apply to Hyde Amendment actions. *See, e.g.*, *United States v. Claro*, 579 F.3d 452, 457 (5th Cir. 2009) ("[W]e join our sister circuits that have held the 'procedures and limitations' incorporated by the Hyde Amendment are those in subpart (d)."); *United States v. Aisenberg*, 358 F.3d 1327, 1339 (11th Cir. 2004) ("[A]ll circuits to consider this issue have concluded that the procedures and limitations in § 2412 incorporated by the Hyde Amendment are the procedures and limitations in § 2412(d)."); *United States v. Heavrin*, 330 F.3d 723, 731 (6th Cir. 2003) ("[T]he [Hyde] Amendment adopts the definition [of 'party'] set forth in the EAJA."); *United States v. Braunstein*, 281 F.3d 982, 994 n.9 (9th Cir. 2002) (noting that, "as a threshold matter, the defendant must show that . . . his net worth is less than $2 million"); *United States v. Adkinson*, 247 F.3d 1289, 1291 n.2 (11th Cir. 2001) ("[R]ecovery under the Hyde Amendment is allowed under only limited circumstances, and is subject to the restrictions and procedures articulated by the language of the law and its legislative history. A criminal defendant must show, for example, that . . . his net worth was less than two million dollars[.]" (citation omitted)); *United States v. Knott*, 256 F.3d 20, 26–27 (1st Cir. 2001) (affirming the "district court's dismissal of [defendant's] claim for fees under the Hyde Amendment on the ground that his net worth renders him ineligible" because the "district court was correct to require fee applicants to meet the eligibility requirements of EAJA § 2412(d)"); *United States v. Gardner*, 23 F. Supp. 2d 1283, 1293 (N.D. Okla. 1998) ("Another requirement incorporated into the Hyde Amendment is the provision in the EAJA that limits fee awards to 'an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed.'" (quoting 28 U.S.C. § 2412(d)(2)(B))).

### III.   Discussion

#### A.   Whether Ms. Gillum Satisfies the Procedural Prerequisites for Relief

To win relief under the Hyde Amendment, the applicant must be a criminal defendant not represented by assigned counsel paid for by the public. 18 U.S.C. § 3006A (Note). Ms. Gillum retained private counsel for her criminal defense. Doc. 39-1 at 1–2 (Morgan Decl.). So, she meets this threshold requirement. Ms. Gillum also must have been a prevailing party in the underlying criminal action. 18 U.S.C. § 3006A (Note). Here, the court dismissed the Indictment against her with prejudice. Doc. 36 at 1–2. She is thus a prevailing party for purposes of a Hyde Amendment fee request.

And a qualifying fee applicant must also be a "party" under 28 U.S.C. § 2412(d)(2)(B)—either (1) "an individual whose net worth did not exceed $2,000,000 at the time the . . . action was filed" or (2) "any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the . . . action was filed, and which had not more than 500 employees at the time the . . . action was filed[.]" Here, the government asserts that Ms. Gillum failed to satisfy the net worth requirement. Doc. 62 at 15. Ms. Gillum later filed an affidavit attesting that her net worth was below the individual cap when she filed her request for fees. Doc. 65 at 2 (Gillum Aff.). But that response answers an unasked question. More problematic for Ms. Gillum's motion, the affidavit fails to answer the question that the statute requires the court to ask.

Ms. Gillum informs the court of her net worth when she moved for a fee award. *Id.* But the statute cares about her financial state months before then—when the underlying criminal action was filed on May 29, 2019. *See* 28 U.S.C. § 2412(d)(2)(B). The affidavit thus fails to

establish Ms. Gillum's net worth *at the time the action was filed*. On this record, the court cannot conclude that Ms. Gillum is a "party" under 28 U.S.C. § 2412(d)(2)(B). *See Shooting Star Ranch, LLC v. United States*, 230 F.3d 1176, 1177 (10th Cir. 2000) (declining to conclude that district court abused its discretion in denying litigant "party" status under 28 U.S.C. § 2412(d)(2)(B) where litigant's proffered evidence of net worth failed "to establish that, at the time the civil action was filed," litigant met the statutory net worth requirement). Because the Hyde Amendment incorporates 28 U.S.C. § 2412(d)(2)(B) and thus requires that Ms. Gillum be a "party" under that statute, the court cannot conclude that she is a qualifying applicant for a Hyde Amendment fee award because she only has provided the court with a snapshot that captures her net worth after the time the criminal action was filed.

But hesitant to deny the motion on that defect alone, the court considers the merits of Ms. Gillum's claim to confirm that the circumstances here do not warrant a fee award.[2] This analysis reveals that Ms. Gillum doesn't qualify for an award for another independent reason.

### B.     Whether the Position of the United States was Vexatious, Frivolous, or in Bad Faith

Ms. Gillum asserts that the prosecution against her "lacked probable cause, was done to harass Ms. Gillum and her husband, was utterly frivolous in that there was no legal theory under

---

[2]     In its earlier Memorandum and Order (Doc. 61) ruling on the parties' motions for leave to file under seal, the court explained that "'[s]ection 2412(d)(2)(B) defines a 'party'—and thus someone who possibly may collect relief under § 2412(d)—as 'an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed[.]'" Doc. 61 at 4 (quoting 28 U.S.C. § 2412(d)(2)(B)). The court regrets both (1) that the defect apparent in Ms. Gillum's affidavit evaded illumination at that time, and (2) that the court's directive that Ms. Gillum file her affidavit consistent with that Memorandum and Order might have implied that the court thought the affidavit provided the court with sufficient information to determine whether she satisfies the net worth element of her claim. *See id.* at 5 (construing Ms. Gillum's affidavit as "assert[ing] generally that her net worth does not exceed the statutory cap").

Though uncertain, the court suspects there's a reasonable chance that Ms. Gillum could, if ordered to show cause, show that her net worth satisfied the statutory requirement at the action's genesis. But, as the court explains below, Ms. Gillum's motion bears an independent defect that precludes relief. So, the court declines to ask the parties to litigate needlessly the net worth issue.

which Ms. Gillum could be held liable given the absence of evidence and it was undertaken in bad faith—both the case agent/financial analyst and the prosecutor knew there was a lack of evidence yet proceeded anyway." Doc. 39 at 2. The government rejects her reasoning. *See, e.g.*, Doc. 62 at 4. The court considers each possible basis for a Hyde Amendment award. The court begins by considering frivolity.

### 1. Whether the Position of the United States was Frivolous

Ms. Gillum asserts that the position of the United States was frivolous. Doc. 39 at 2. "Frivolous means '[l]acking a legal basis or legal merit; not serious; not reasonably purposeful.'" *Lain*, 640 F.3d at 1137 (quoting Black's Law Dictionary 692 (8th ed. 2004)). Ms. Gillum offers several reasons why the government's position lacked a legal basis or merit. These reasons revolve around her purported lack of involvement with both (1) the corporate entity and (2) the financial transactions at issue in this case. Doc. 39 at 2–4. The government contests those claims. Under scrutiny, several of Ms. Gillum's core arguments crumple. They cannot support her claim that the position of the United States was frivolous. The court now explains why.

### a. Ms. Gillum's claim that the government knew that she was not an owner or operator of Plainville Livestock Commission, Inc. (PLC)

Ms. Gillum claims that the position of the United States was frivolous because the Indictment suggested that she was an owner or operator of PLC while government was "well aware" that she was not. *Id.* at 2–3. She offers several reasons to show that the government knew that Ms. Gillum did not own or operate the corporation before the government presented the Indictment to the Grand Jury. *Id.*

The United States contests this argument by rejecting its premise. The government asserts that Ms. Gillum's "assertion that she was not an owner or operator of PLC is false." Doc. 62 at 6. The government explains that evidence shows that Ms. Gillum was an officer—the

6

corporate Secretary—of PLC and was "authorized to enter into transactions and take a variety of actions on behalf of PLC." *Id.* The corporation's by-laws define duties of the Secretary and authorize the corporation's officers to enter into contracts and make transactions on PLC's behalf. Doc. 62-1 at 7, 9. And the government points to evidence showing Ms. Gillum's actions in her officer role. Doc. 62 at 7 (citing Doc. 62-2).

The government's arguments are persuasive. It appears that the government possessed information showing that Ms. Gillum was an operator—a corporate officer authorized to contract on the corporation's behalf—of PLC. The court thus cannot accept Ms. Gillum's assertion that the government knew she was neither an owner nor operator of PLC. This assertion thus cannot support her claim that the position of the United States was frivolous.

### b. Ms. Gillum's claim that the government knew that she was not the signatory or recipient on any of the transactions in Counts 1–31

Ms. Gillum asserts that the United States knew several key facts showing "a lack of direct participation" by Ms. Gillum in the alleged check-kiting. Doc. 39 at 3. She claims that the government knew that Ms. Gillum was not the signatory or recipient on any of the transactions in Counts 1–31. *Id.* And, she asserts, the government acknowledged that it lacked evidence to suggest Ms. Gillum had knowledge about the transaction at issue. *Id.*

The government disputes this contention, too. *See* Doc. 62 at 7–9. The United States asserts that Ms. Gillum was involved with various transactions at issue in the criminal prosecution. *First*, the government asserts that the "face of the TBK Bank documents and the UCC filing show that [Ms. Gillum] was not only aware of the TBK Bank debt owed by PLC, but that she was personally involved with it in August 2016 because she signed the Security Agreement as a debtor." *Id.* at 8. *Second*, the government also notes that Ms. Gillum was an authorized signer on both (1) the PLC Clearing Account, and (2) the PLC General Account at

7

Almena State Bank, and able to make payments and transfer funds from the PLC General Account. *Id.* The government has presented evidence that supports its assertions and precludes the court from accepting Ms. Gillum's assertion that the government knew she was neither a signatory nor recipient on any of the transactions in Counts 1–31. *Id.* at 7–8 (citing Docs. 62-4, 62-5, 62-6, 62-7).

The government also contests Ms. Gillum's assertion that she had not signed documents for the U.S. Small Business Administration (SBA) loan. *Id.* at 8–9. It contends that, as the SBA Promissory Note defines the terms, Ms. Gillum was a "Guarantor" who signed "Loan Documents." *Id.* (citing Doc. 62-8). The government concludes that the SBA loan documents demonstrate that Ms. Gillum was directly involved with the SBA loan because Ms. Gillum signed several relevant documents and her information was included on the form used to assess loan eligibility. *See id.* at 9 (first citing Doc. 62-8 at 9–11; then citing Doc. 62-9 at 1; then citing Doc. 62-10 at 5 (further citations omitted)).

The evidence showing Ms. Gillum's involvement with PLC, the TBK Bank Promissory Note Security Agreement, and the SBA loan erodes her other arguments about the false statement charge and attempting to influence a line of credit charge premised on her purported lack of involvement with the TBK loan. *See* Doc. 39 at 4. Several of the supposed falsehoods that Ms. Gillum's motion identifies turn out not to be falsehoods at all. This revelation causes most of Ms. Gillum's reasons for a Hyde award to wilt. The court thus cannot agree with her claim that the government "drafted an Indictment containing false representations it knew to be false" and "perpetuated those false representations" through its grand jury witness and the prosecutor "which resulted in an Indictment returned, completely unsubstantiated, under any legal theory or any facts." *Id.*

8

The kernel buried deep within Ms. Gillum's Hyde award claim that does remain concerning is the prosecutor's misstatement to the Grand Jury about the TBK Bank Promissory Note. The government now concedes that the prosecutor misled the Grand Jury when he asserted that Ms. Gillum had *signed* the TBK Bank Promissory Note. Doc. 62 at 13. The government's Response tries to mop up that error. *See id.* at 13–14. But the mess is made and nothing can change the fact that the prosecutor told the grand jury something that simply wasn't true. This is troubling. Still, given the record and the parties' arguments about the factual basis for the government's position, the court concludes that this error is not sufficient to render the position of the United States frivolous for purposes of the Hyde Amendment. Ms. Gillum has failed to establish that the position of the United States was frivolous, so that ground cannot yield an award of attorney's fees here.

With this analysis of Ms. Gillum's criticisms of the government's prosecution in mind, the court briefly considers the other bases for a fee award that the Hyde Amendment provides: positions that are vexatious or made in bad faith.

### 2. Whether the Position of the United States was Vexatious

Ms. Gillum asserts that the government's prosecution of her was vexatious. "Vexatious means 'without reasonable or probable cause or excuse; harassing; annoying.'" *Lain*, 640 F.3d at 1137 (quoting Black's Law Dictionary 1596 (8th ed. 2004)). To the extent Ms. Gillum asserts that the government's position was without reasonable or probable cause or excuse, the court's preceding analysis of purported frivolity applies to its analysis of vexation. For the reasons explained above, she has not established that the position of the United States here was without reasonable or probable cause or excuse.

As *Lain* suggests and the Sixth Circuit has explained, "the term 'vexatious' embraces the distinct concept of being brought for the purpose of irritating, annoying, or tormenting the opposing party." *United States v. Heavrin*, 330 F.3d 723, 729 (6th Cir. 2003). Since the court's earlier analysis did not confront this basis for a Hyde award, the court now considers it and asks whether the position of the United States in this case was harassing or annoying.

Ms. Gillum asserts that the government drafted the Indictment against Ms. Gillum as a means "to pressure Ms. Gillum's husband, the codefendant, who has consistently denied any wrongdoing in his dealings with bank officials and investigators with the United States Department of Agriculture." Doc. 39 at 4. Ms. Gillum's motion offers no direct evidence to support her conclusion about the government's intent. She does assert that the government drafted an Indictment that (1) included known falsehoods, *see id.*, and (2) emerged from a dearth of evidence, *id.* at 2. But the court has explained why Ms. Gillum's arguments on that point are unpersuasive given documents that undermine her claims about her relationships with both the corporation and the financial transactions at issue in this matter. Ms. Gillum's motion fails to show that the position of the United States here was harassing, annoying, or otherwise vexatious under the Hyde Amendment.

### 3. Whether the Position of the United States was in Bad Faith

Ms. Gillum also asserts that the position of the United States was in bad faith. Doc. 39 at 2. Bad faith means "[d]ishonesty of belief or purpose." *Lain*, 640 F.3d at 1137 (citation and internal quotation marks omitted). The court's preceding analysis of the other grounds for a Hyde award—frivolous and vexatious positions—shoulders most of the analytical load here. For largely the same reasons that Ms. Gillum fails to show that the position of the United States was vexatious or frivolous, her assertion of bad faith also falls short.

Ms. Gillum asserts that the United States adopted its position in bad faith given (1) the government's investigation and prosecution of her co-defendant husband and his refusal to admit wrongdoing, and (2) that the government perpetuated false representations about her that were completely unsubstantiated under any legal theory or any facts.  Doc. 39 at 4.  The court has already explained why Ms. Gillum has failed to support adequately either of these claims.  The record reveals that, in several key instances, the government's representations about Ms. Gillum are not as Ms. Gillum describes.  And while it is *possible* that the government's actions against Ms. Gillum were a devious ploy to turn up the heat on Mr. Gillum, a movant seeking a fee award under the Hyde Amendment must show more than a mere possibility that the position of the United States was vexatious, frivolous, or in bad faith.  *See* 18 U.S.C. § 3006A (Note) (authorizing the court to award fees and expenses "where the court finds that the position of the United States was vexatious, frivolous, or in bad faith").

As discussed above, the government concedes that the federal prosecutor misstated that Ms. Gillum had signed the TBK Bank Promissory Note.  Doc. 62 at 13.  But it contends that "[n]othing in the grand jury transcript can be 'classified as the conscious doing of a wrong because of dishonest purpose or moral obliquity.'"  *Id.* (quoting *United States v. Erwin*, No. CR-08-33-FHS, 2010 WL 1816349, at *4 (E.D. Okla. May 3, 2010)).  Ms. Gillum's motion does not show that the government acted with ill-intent.  Absent evidence showing dishonesty of belief or purpose, the court cannot conclude that the position of the United States was taken in bad faith. *See In re 1997 Grand Jury*, 215 F.3d 430, 437 (4th Cir. 2000) (affirming district court's denial of request for fee award under the Hyde Amendment where the government "could have, and perhaps should have, done more to investigate before bringing charges" but there was no evidence that the government's "alleged omissions were the product of ill-intent . . . rather than

11

simple negligence or lack of judgment"). Ms. Gillum thus cannot rely on "bad faith" to justify a Hyde Amendment fee award.

The position of the United States must have been frivolous, vexatious, or in bad faith for a prevailing party to secure an award under the Hyde Amendment. Ms. Gillum fails to show that one of those three required sins is present here. The award sought is thus unavailable.

## IV.    Conclusion

The government misstated certain facts to the Grand Jury, secured an Indictment against Ms. Gillum, caused her to shell out significant money to defend herself, and then, when challenged, successfully moved the court to dismiss the Indictment with prejudice. For anyone who feels wrongly indicted or forced to pursue a Pyrrhic campaign, this series of events surely induces fear, frustration, and ire, and inflicts financial pain. But the Hyde Amendment ties the availability of an award of attorney's fees not to the gravity of the applicant's injury, but to the degree of the government's culpability. Congress has authorized fee awards only for certain defendants in a narrow set of circumstances.

Despite the harm she sustained, the statute's limits preclude relief for Ms. Gillum. At bottom, her motion fails to show that one of the qualifying circumstances presents itself here. And she also fails to show that she is a proper applicant. For these reasons, the court cannot award her the attorney's fees and litigation expenses she seeks. The court must deny the motion accordingly.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Camden Gillum's "Motion and Memorandum in Support of Camden Gillum's Application for Award of Attorney's Fees and Litigation Costs" (Doc. 39) is denied.

**IT IS SO ORDERED.**

**Dated this 16th day of March, 2021, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
**Daniel D. Crabtree**
**United States District Judge**
